Intra-Mar Transport Corp., Formerly Gondrand Transport Corp. *v.* United States (No. 4810)[1]

[1] C. A. D. 578.

United States Court of Customs and Patent Appeals, December 21, 1954

*Brooks & Brooks (Thomas J. McKenna* of counsel) for appellant.

*Warren E. Burger,* Assistant Attorney General *(Richard E. FitzGibbon, Daniel I. Auster,* and *Samuel D. Spector,* special attorneys, of counsel), for the United States.

[Oral argument October 14, 1954, by Mr. McKenna and Mr. Auster]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and COLE, Associate Judges

COLE, Judge, delivered the opinion of the court:

This appeal is from a judgment of the United States Customs Court, Third Division, rendered pursuant to the court's decision, C. D. 1585, which denied the petition of Intra-Mar Transport Corporation for remission of additional duties levied and collected on two importations of hard candy from Cuba, entered at the port of New Orleans on December 16, 1946. Authority for the collector's action was based on section 489 of the Tariff Act of 1930, which, prior to its amendment by the Customs Simplification Act of 1953,[1] made provision for the imposition of additional duties on imported merchandise entered at a value less than that value returned upon final appraisement.

Appellant's position on appeal is that it has, by satisfactory evidence, proved that the undervaluation of the involved merchandise was without intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of such merchandise, and that, in accordance with such proof, the additional duties so collected should be remitted as authorized by the further provisions of section 489, *supra.*

The material facts are these: The imported merchandise (two entries) consisted, in the aggregate, of 4,000 cartons of candy weighing 72,000 pounds. It was exported from Cuba by Central "San Ramon" and invoiced at 11 cents per pound to the importer, Jose Arago, at New Orleans. Original entry at that port was made at the invoice price of 11 cents per pound in the name of the Gondrand Transport

---

[1] Subsection (b) of section 18 of the Customs Simplification Act of August 8, 1953 has amended section 489 of the Tariff Act of 1930 by deleting from its provisions the first two paragraphs of the section. See 19 U. S. C. Sec. 1489 (1952 Ed., Supp. I).

Corporation, acting on behalf of the importer, by Zanes & Company, customs house brokers in New Orleans authorized by Gondrand to act as its agent in making the entry. Following amendment of the entry to 15 cents per pound on November 12, 1947, discussed *infra*, per instructions to Zanes from Gondrand, a final appraisement was returned on Janauary 9, 1948, valuing the merchandise at $8 per carton, net, packed, less the cost of American containers (bottles) at $1.44 per carton and less nondutiable charges, sugar tax, and duty, which, on more detailed breakdown, represents a value of approximately 25 cents per pound of candy.

It should be here noted that the Gondrand Transport Corporation did business as customs house brokers, with offices in New York and Havana, while an affiliate, the Gondrand Shipping Company, with an office in New Orleans, did business as freight forwarders. The operations of both Gondrand enterprises were seemingly conducted on an integrated basis, and the appellant herein, Intra-Mar Transport Corporation, has succeeded to the business of each of said companies.

At the time it sought to prepare the entry papers, Zanes & Company had no information as to the value of the merchandise other than that appearing in the invoice, and it therefore attempted to complete a submission sheet with which it hoped to apply to the appraiser and ascertain from him prices on similar commodities covering the same periods of time of exportation. As a condition to the appraiser releasing such information, however, it was mandatory that the submission sheet be completely filled out, and, in this respect, information from Arago, the importer, relating to subsequent orders and quotations, including the price and date of such orders and quotations, was required. Gondrand's New Orleans office, at the request of Zanes, endeavored to locate Arago to secure the desired information, but allegedly was not able to determine his whereabouts. No submission sheet, therefore, was ever filed with the appraiser.

After authorizing Zanes to make entry at 11 cents per pound, as aforesaid, Gondrand phoned its Havana office with instructions to approach the shipper, Central "San Ramon," and make inquiry concerning the price and value of the merchandise. This inquiry eventually resulted in information being received to amend the entry to 15 cents per pound. In the interim period, however, a customs agent, Thomas McLendon, had visited Gondrand in New Orleans and questioned the correctness of the entered value. Gondrand agreed to cooperate with the agent in his investigation, allowing him access to its files, which, insofar as we can determine, contained no material information relating to the value of the merchandise other than that set forth in the invoice. Following the agent's visit, Gondrand contacted the Camp-Bordelon Wholesale Candy Company of Houston, Texas, the ultimate purchaser of the candy and to whom it had been

shipped by Gondrand per instructions from Arago, in an effort to ascertain the price paid for the merchandise, but Camp-Bordelon refused to release such information.

It appears that Gondrand had previously satisfied itself that Arago was a reliable and trustworthy businessman, and had received from him a deposit to cover the possible assessment of additional duties.

Approximately one month after original entry of the merchandise, Alvin Scharff, customs agent in charge of Houston, Texas, located Arago and interrogated him thereafter on two occasions, one of which was in the presence of a representative of Zanes & Company. The same customs agent also interviewed the ultimate purchaser, Camp-Bordelon, and was able to ascertain that the involved candy was purchased at approximately 22½ cents per pound.

On the basis of the foregoing facts of record, the appellant contends that since it fully disclosed all facts within its possession bearing on the correct dutiable value of the candy, attempted to contact the importer, sought information from the shipper, and delivered its files to the customs agent investigating the entries, it has shown by satisfactory evidence that it did not intend to defraud the revenue of the United States, conceal or misrepresent the facts, or deceive the appraiser.

We cannot agree with the appellant's position. Affirmative evidence that the petitioner intentionally undervalued the goods is not required. In the case of *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453, this court established the principle that a petitioner, seeking to have additional duties remitted to it, must show (1) that in undervaluing his merchandise he was acting in entire good faith, and (2) that no facts or circumstances were known to the petitioner when he made entry that would cause a prudent and reasonable person to question the correctness of the values given by him, and (3) that a full disclosure was made to the collector in making the entry of all material facts within his knowledge and possession relative to the value of the imported merchandise. In *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70, we stated that it was the duty of the entrant to inform himself as to the correctness of his representations relating to the value of the merchandise, and that a showing of indifference to its proper value does not meet the requirements of satisfactory proof under the statute.

It is clear that Zanes did not directly contact the shipper in Cuba, but was satisfied to confine itself to Gondrand's source of information. Gondrand, itself a broker, confined its efforts to inquiring of the shipper as to the price paid for the merchandise and the value thereof, Arago's trustworthiness and financial responsibility, and contacting Camp-Bordelon on one occasion to ascertain the price paid by it for

the involved candy. While it is indeed peculiar to find one customs broker placing sole reliance upon another broker for information as to value, the real weakness in appellant's case is clearly demonstrated by the following from the opinion of the court below:

* * * Mr. Bos [customs broker employed by Gondrand] testified that Mr. Arago, the importer and purchaser of record, was unavailable; that he was in Houston or some other place and could not be located. However, Mr. Bos did not state what efforts were made to contact him. Since Mr. Scharff interviewed Mr. Arago in Houston a little over a month after the date of entry herein, it is apparent that the mere statement that he was unavailable does not establish that due diligence was exercised in attempting to locate him or to get information from him. * * *

There is evidence that Gondrand's Havana office was asked to contact the shipper, Central "San Ramon," but there is no direct evidence as to what was done to ascertain from it the value of the merchandise. It appears, in fact, that Gondrand was more interested in establishing Mr. Arago's financial responsibility than the value of the merchandise. Finally, after a visit by Customs Agent McLendon, which definitely put Gondrand on notice that the value of the merchandise was being questioned, an inquiry was made of Camp-Bordelon, the ultimate purchaser. However, it was apparently made in such a way that Camp-Bordelon saw no reason to answer it.

The foregoing statement is strongly indicative of careless neglect and indifference on the part of Gondrand and Zanes, and it is well settled in remission cases that the courts will not condone such conduct.

In *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306, and *United States* v. *Edward H. Corrigan*, 38 C. C. P. A. (Customs) 26, C. A. D. 434, we held that when a submission sheet is returned without information it is tantamount to notice that a further investigation to ascertain the correct dutiable value of merchandise is essential. Where the facts indicate, as in the instant case, that sufficient information to complete a submission sheet to the appraiser is not available to the entrant, the duty to consult all other logical sources to determine such value is absolutely compelling.

It appears to us that Gondrand was satisfied that Arago, the importer, was a responsible individual, and since it had received from him what it deemed to be sufficient money to cover any additional duties that might be assessed, thus protecting itself from possible financial injury, neither it nor Zanes sought with the necessary degree of prudence information which would have revealed the correct dutiable value.

For the reasons hereinbefore stated, the judgment of the United States Customs Court is *affirmed*.

On account of illness, GARRETT, C. J., did not participate in the hearing or decision of this case.